*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-075

SEPTEMBER TERM, 2013

| | |
|---|---|
| In re A.P., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 10-1-12 Frjv |

Trial Judge: Martin A. Maley

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his parental rights in son A.P. He argues that the court erred in assessing his ability to parent A.P. within a reasonable period of time, and finding that the Department for Children and Families (DCF) played no material role in thwarting his relationship with A.P. We affirm.

A.P. was born in October 2011. DCF was involved with mother prior to A.P.'s birth based on reports of abuse and neglect of mother's other children. Mother suffers from significant substance abuse and mental health issues. In February 2012, DCF obtained temporary custody of A.P. and mother's other children. By mother's stipulation, the children were later found to be in need of care or supervision (CHINS). In October 2012, shortly after father's paternity was confirmed, DCF moved to terminate parents' rights. Mother voluntarily relinquished her rights in November 2012. Following a January 2013 hearing, the court terminated father's rights.

The court found as follows. Mother and father began their relationship in 2011. In June 2011, father was arrested for cultivating marijuana in the home he shared with mother. Father was incarcerated when A.P. was born. When father was released from jail on February 29, 2012, he contacted a DCF caseworker about visiting A.P. At that time, father admitted to substance abuse issues, including intravenous cocaine use, as well as domestic violence issues with mother. DCF referred father for mental health counseling. Less than two weeks later, however, before any parent-child contact or assessments could occur, father was charged with aggravated assault with a weapon, simple assault, and disorderly conduct, and he returned to jail. Father later pled guilty to two counts of simple assault and one count of disorderly conduct. He was released from jail in October 2012, when A.P. was one year old.

Father argued at the termination of parental rights hearing that DCF had hindered his ability to have parent-child contact with A.P. He maintained that DCF should have arranged to bring A.P. to jail. The court found no authority that would require DCF to facilitate parent-child contact between an infant in DCF custody and a putative father who is in jail. It noted that the only time that father requested parent-child contact was at a meeting with DCF when he was not

incarcerated. Father did not tell the DCF caseworker that he was incarcerated again. He did not contact DCF upon his release from jail in October 2012. Although the DCF caseworker contacted father after his release and scheduled a meeting, father did not show up. The court thus rejected father's assertion that DCF thwarted father's relationship with A.P.

After considering the statutory best-interest factors, the court concluded that termination of father's rights was in A.P.'s best interests. As it explained, father had been incarcerated for most of A.P.'s life and had never met A.P. While father complained that DCF failed to bring A.P. to jail to visit him, father had never sent A.P. a card, letter, or a gift. Even after he was released from jail, father made no attempt to contact A.P. The court noted, moreover, that father still struggled with substance abuse and mental health issues. At the same time, A.P. had already been in DCF custody for over a year, a substantial period of his life. He had bonded with his foster family and he was doing well in their care. While father expressed love for A.P., the court found no reasonable likelihood that father would be able to resume parental responsibilities within any reasonable period of time related to A.P.'s interests. The court found that A.P. needed a stable home and permanency now and he could not afford to wait for father any longer. The court thus terminated father's rights. This appeal followed.

As we have often repeated, the trial court must consider four statutory factors in determining if termination of a parent's rights is in a child's best interests. See 33 V.S.A. § 5114. The most important factor is the likelihood that the parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). "The reasonableness of the time period is measured from the perspective of the child's needs and may take account of the child's young age or special needs." In re C.P., 2012 VT 100, ¶ 30 (citations omitted). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

Father suggests that the court committed clear error in finding that he could not parent A.P. within a reasonable period of time. According to father, DCF advocated a three-to-six month timeframe for achieving permanency when A.P. first came into custody because he was an infant, but there was no evidence as to A.P.'s individual and current circumstances. We disagree. There was ample evidence of A.P.'s current situation, and the court considered this evidence in reaching its conclusion. As set forth above, A.P. had been in DCF custody for most of his life. He had been with the same foster family for most of that period, and he had bonded with them. Father had shown no progress in overcoming his mental health and substance abuse issues. He had no relationship with A.P. due to his own actions. The evidence amply supports the court's conclusion that a reasonable time had passed from A.P.'s perspective and that A.P. needed permanency now.

Father next argues that the court erred in finding him, rather than DCF, responsible for the absence of any father-child relationship. We reject this argument. As set forth above, father had no relationship with A.P. because father was in jail for most of the child's life. Father did not try to communicate with A.P. while he was incarcerated, and he did not ask DCF to arrange visitation while he was in jail. He did not try to communicate with A.P. while in jail. The only effort father made to have visits with A.P. was during a short period while he was out of jail. Father was then reincarcerated before any steps could be taken toward visitation. When father got out of jail in October 2012, he made no effort to see A.P. He failed to attend a meeting set

2

up by DCF. The evidence overwhelmingly shows that father, not DCF, was responsible for the absence of any father-child relationship. We find no error in the court's decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice